JENNIE F. HALL, Appellee, v. C. DURANT JONES et al., Appellants.

PRINCIPAL AND AGENT: Duties of Agent—Misconduct—Proximate Cause—Insufficient Evidence. Causal connection between the act alleged and the damage suffered must be established.

*Appeal from Perry Superior Court.*—W. W. CARDELL, Judge.

MAY 21, 1919.

ACTION to recover on a written contract for services rendered and expenses incurred. The opinion states the

facts. Verdict and judgment for the plaintiff. Defendants appeal.—*Modified and affirmed on condition.*

*S. Trevarthen* and *Wm. H. Winegar,* for appellants.

*Harry Wifvat,* for appellee.

PER CURIAM.—I. This action is brought upon a written contract, to recover for services performed and expenses incurred while performing them. The defendants admit the execution of the contract, but deny that plaintiff has performed all the services for which she seeks to recover, and deny that the contract, as written, permitted her to make certain expenditures at the expense of the defendants, for which she makes claim. The defendants also filed a counterclaim, in which they seek to recover for certain losses claimed to have been sustained because of certain conduct, representations, and statements made by the plaintiff, while acting for them under the contract.

At the conclusion of all the testimony, the court withdrew from the jury any consideration of the counterclaim, and withdrew all evidence bearing upon that branch of the case. The cause was tried to a jury on plaintiff's petition, and defendants answered thereto, and a verdict was returned for the plaintiff for $202.57. From this judgment, defendants appeal.

The record discloses that, on the 18th day of September, 1917, plaintiff began this action upon a certain written contract, by the terms of which she undertook to act as booking agent for the defendants the Jones Chautauqua System, of Perry, Iowa. Her duties under the contract were to procure Chautauqua contracts in different towns and cities in the territory assigned to her. The contract, so far as material to this controversy, provides that the defendants agree to pay to plaintiff $15 a week, while engaged in the work assumed under her contract, with $10

extra for any week in which a contract is secured, plus $25 additional for all Chautauqua contracts secured, one half of said commission to be paid immediately upon receipt of contract and acceptance of the same by the defendants; the remaining one half to be paid her when said contract is fulfilled, and the Chautauqua named in the contract is completed by the defendants. In addition thereto, the defendants agreed to reimburse the plaintiff for all moneys expended by her for railroad tickets, excess baggage charges, bus, dray, livery, and automobile charges, such as are necessary while engaged in the work covered by the contract, and that no other expenses whatsoever shall be demanded by her or paid by the defendants.

It was further stipulated in the contract that the plaintiff should give her whole time to the work, during the life of the contract. Her agreement was to form committees, secure guarantors, and do whatever work was necessary to close a contract, and not to make any conditions not written in the contract and made a part of the same, and that, if she made any conditions or concessions not written in contracts she secured, the cost of such conditions or concessions should be charged to her account and paid by her.

This contract was made and entered into on the 3d day of January, 1917. She began work under the contract on the 5th day of January, and ceased working and left the employment on the 28th day of July, 1917.

The plaintiff admits, however, that, between said dates, there was some time in which she was not actually engaged in the work. The time included between the dates above named would be 29 weeks. She sued for only 25 weeks. The testimony shows 24½ weeks in actual service, at $15.00 a week, amounting to $367.50. She claims that she procured contracts at the following places: Minburn, Arlington, Edgewood, Burr Oak, Stuartville, Minnesota, Hayfield, Minnesota, Garnavillo, Iowa, Brandon, Iowa,

Mead, Nebraska, Nehama, Nebraska, Odell, Nebraska, and
Hubbell, Nebraska,—12 in all; and that, in all of these
places, contracts were not only secured, but accepted
and fulfilled by the defendant: and it is conceded by the
defendant that this is true. So far as these contracts are
concerned, she is entitled, under her contract, to the sum of
$25 each, making a total of $300. She claims that she se-
cured, also, contracts at Central City, Iowa, and Haigler,
Nebraska, which were accepted by the defendant, but not
fulfilled. For these she claims $12.50 each, or $25.

The defendants concede that the plaintiff was entitled,
under her contract, to $300 for the first 12 contracts made
by her, as hereinbefore set out, and admit that she secured
a contract for Central City, and that she is entitled to
$12.50 therefor. The defendants further admit that, for the
13 contracts secured, she is entitled to $10 additional for
each contract, making $130, but claim that she is not en-
titled to anything for securing the Haigler contract, in
Nebraska, for the reason that it was not accepted by the
defendants, or fulfilled. If this be true, it requires that the
plaintiff's claim be reduced $22.50. This is really the only
controversy that requires our consideration. Some con-
tention is made as to the expenditures, and some conten-
tion is made as to the number of weeks she was actually
engaged; but these questions are so plainly established in
favor of plaintiff that the jury's verdict cannot be dis-
turbed, and we do not deem it necessary to discuss them.
It appears that plaintiff received on her account, before the
action was commenced, the sum of $746.27. Summarizing,
then, the evidence shows that plaintiff spent, in actual serv-
ice for the defendant under the contract, 24½ weeks at $15,
amounting to $367.50; that she secured 13 contracts, for
each of which she was entitled to an additional $10, amount-
ing to $130; that she secured 12 contracts for which she is
entitled to $25 per contract, amounting to $300, and one

contract, which was not fulfilled, for which she is entitled to $12.50; that she expended, in the interests of the defendant, while performing her contract, $116.34, making a total credit in her favor of $926.34, which after subtracting the amount received by her, $746.27, leaves a balance of $180.07, that plaintiff is entitled to recover. This sum is arrived at by eliminating the Haigler contract. This elimination is made on the theory that it was never actually secured by the plaintiff or accepted by the defendant. Plaintiff, in her account, has charged $22.50 for securing this contract. This, deducted from the total amount the jury found in her favor, leaves $180.07. To reach this requires simply a mathematical computation. We do not feel disposed to reverse the case on this ground, and so affirm it, provided that the plaintiff remits all allowed by the jury in her favor over and above this amount, and consents to a judgment for the amount herein found to be due, within 90 days from the filing of this opinion.

II.   This brings us to a consideration of the action of the court in dismissing defendant's counterclaim.

While, in this counterclaim, the defendant alleges certain facts as a basis for recovering damages, the proof falls so short of establishing any of them that we think the court would be justified in dismissing it on that account. But the further reason presents itself, and sustains the court's action. There is no evidence showing any causal relation between the facts upon which the damages are predicated and the damages claimed to have been sustained. On the question of damages, there was but one witness. That was the defendant, Jones, and his testimony was of this character:

"There was a loss of $287.50 at Minburn. We sustained a loss of $60 at Stuartville, because certain persons who signed for tickets refused to purchase them. We sent men up to Brandon, to help get the work started. It cost

us $30 or $35. The loss at Stuartville was caused, as reported to us, by part of the signers' being irresponsible."

It may be all true that there was loss, but there is nothing to show that this loss is traceable to any dereliction of duty or malfeasance or misfeasance or breach of contract on the part of the plaintiff. Her contract in no way called upon her to aid in the putting on of the Chautauquas. She was not required to sell tickets. Anything that she did in that line was a gratuity; something for which she was not employed. It may be that some of these Chautauquas were not financial successes, and it may be true that losses occurred; but there is nothing in the record to show, aside from the merest speculation, that the plaintiff was in any way responsible for these losses. So we say there is no causal connection between the acts complained of and the losses testified to. The court was right in sustaining the motion to dismiss the counterclaim as having no support in the evidence.

The judgment of the district court, therefore, as herein modified, is affirmed on condition.—*Modified and affirmed on condition.*

LADD, C. J., WEAVER, GAYNOR, and STEVENS, JJ., concur.